UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH REYNOLDS,                          :        CIVIL ACTION NO. 3:CV-04-2396

       Petitioner               :        (Judge Nealon)

       v.                       :        **FILED**
                                                **SCRANTON**

TROY WILLIAMSON,                         :        NOV 1 4 2005

       Respondent               :        PER _____
                                                DEPUTY CLERK

**MEMORANDUM AND ORDER**

Petitioner, Keith Reynolds, an inmate confined in the United States Penitentiary, Allenwood, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He alleges that his January 2004 parole hearing deprived him of his legal rights, was punitive in nature, and failed to comply with District of Columbia parole guidelines. A response and traverse having been filed, the petition is ripe for disposition. For the reasons set forth below, the petition will be denied.

## BACKGROUND

Reynolds is serving an aggregate life sentence imposed by the Superior Court of the District of Columbia. His sentence is comprised of a 1982 sentence for carrying a pistol without a license; a 1984 sentence for prison breach, a 1984 sentence for armed robbery and carrying a pistol without a license; and a 1989 sentence for armed robbery, malicious destruction of property and carrying a pistol

without a license. (Doc. 11, Ex. 1, Sentence Monitoring Computation). He became eligible for parole consideration on this sentence on April 9, 2000. Id.

On September 28, 1999, the U.S. Parole Commission ("Commission") conducted Reynold's initial parole hearing,[1] at which the hearing examiner applied the amended and modified District of Columbia parole regulations codified at 28 C.F.R. § 2.80, et. seq, in determining Reynold's Salient Factor Score (SFS) and Base Point Score. (Doc. 11, Ex. 2, Initial Hearing Summary). Reynolds was assigned an SFS of four, which is computed based upon prior convictions, prior commitments in excess of thirty days, age at time of offense, recent commitment free period, probation, parole, confinement and escape status. His Base Point Score or risk level was found to be a six, which recommends a rehearing guideline of 18-24 months. This number takes into consideration, the SFS, current or prior violence and death of victim or high level of violence. It was noted that Reynolds had completed several programs, thereby achieving a two point reduction for superior program achievement. Petitioner, however, received a two point assessment for negative institutional behavior for two incidents where he had possession of narcotics in a prison facility.

---

[1]On August 5, 1998, "the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code" was transferred to the Commission. National Capital Revitalization and Self-Government Improvement Act of 1997, ("Revitalization Act"), Pub.L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745.

After consideration of all the factors and information presented by the Hearing Examiner, by Notice of Action dated January 3, 2000, the Commission concluded, that Reynolds was a "more serious risk than indicated by your Base Point Score in that you have a history of committing assaultive crimes while under community supervision[;] [w]hile on parole from FYCA sentence for robbery in which victims were shot during the course of the crime; you possessed a firearm in 1982 as is evidenced by your conviction for carrying a pistol without a license[;] [a]fter being sentenced on charges of firearms, you escaped from a halfway house and committed armed robbery[;] [a]fter being sentenced on that robbery charge, you again escaped from a halfway house and committed the instant offense which involved another robbery with a firearm." (Doc. 11, Ex. 3, Notice of Action). Thus, the Commission found a departure from the hearing guidelines was warranted, and recommended that parole be denied and Reynolds be continued for a reconsideration hearing in March 2004, after service of forty-eight months from Petitioner's March 3, 2000 parole eligibility date.

Subsequent to Reynold's initial parole hearing, the Commission amended the guidelines found at 28 C.F.R. § 2.80 to provide for the granting of "presumptive parole dates" up to three years in the future, in contrast to their earlier system under which parole was either granted or denied at each hearing, and the guidelines indicated the time to be served prior to another consideration for parole release. The Commission's rule provides that these revised guidelines "apply at an initial

hearing or rehearing conducted for any prisoner", except for specified exceptions.
For prisoners, like Reynolds, who were given initial hearings under the guidelines
in effect from August 5, 1998 to December 3, 2000, the rule provides that the new
guidelines are to be applied to them subject to the "conversion rules" found at 28
C.F.R. § 2.80(o).  28 C.F.R. § 2.80(a)(5).

On January 8, 2004, Reynolds appeared before Hearing Examiner
Kenneth Walker for his rehearing, pursuant to the conversion rules found at 28
C.F.R. § 2.880(o).[2]  (Doc. 11, Ex. 4, Rehearing Summary).  In considering

---

[2]Pursuant to 28 C.F.R. § 2.80(o):
(o) Conversion rules for retroactive application of the § 2.80 guidelines.
When the guidelines of this section are retroactively applied, the
following conversion rules shall be used.

(1) If the prisoner previously had any points added for negative
institutional behavior under the guidelines formerly found in the
Appendix to § 2.80 (2000) (i.e., the guidelines in effect from August 5,
1998 through December 3, 2000), the total guideline range shall be
increased by the lesser of:

(i) The guideline range from § 2.36 found to apply to the prior
misconduct; or

(ii) The range of months obtained when the number of points previously
added for negative institutional behavior is multiplied by the rehearing
range applicable under the guidelines in the former Appendix to § 2.80
(e.g., if two points previously were added for misconduct and the
applicable rehearing range was 18-24 months, then 36-48 months (2 x
18-24) would be added).

(2) If negative institutional behavior previously was sanctioned by the
application of a guideline range at § 2.36, the total guideline range shall
be increased by that range for that behavior.

4

Reynolds' case  under the new version of § 2.80, the Commission first calculated

his guidelines as it would have at an initial hearing under the new rule, then

followed the procedure for a rehearing.  This was necessary because the rule

regarding "determining the total guideline range at a reconsideration hearing"

---

(3) If the prisoner previously had an extra point deducted for superior program achievement (as opposed to ordinary program achievement) under the guidelines in the former Appendix to § 2.80, the total guideline range shall be decreased by the rehearing guideline range applicable under the Appendix to § 2.80 guidelines (e.g., if an extra point previously was subtracted for superior (not ordinary) program achievement and the applicable rehearing range was 18-24 months, then 18-24 months would be subtracted).

(4) Misconduct or superior program achievement since the last hearing shall be considered in accordance with the guidelines of this section.

In applying this conversion rule to Reynolds, the Commission found the following:

The aggregate rescission guidelines are: 24-60 months.  Pursuant to 2.80(o)(ii), the conversion rule states that the retroactive application of 2.80 guidelines in this case adds resc. guidelines of 36-48 months. (The number of points added for negative behavior (2) multiplied by the rehearing range (18-24 months).

Pursuant to 2.80-04(b), since the 2.36 guidelines have a lower minimum, but higher maximum guideline range then a co positive guideline range is calculated, using the lower applicable minimum and the lower applicable maximum gls.  As a result, the composite rescission guideline range is 24-48 months.

Regarding SPA, S. was awarded 2 points at his previous hearing. Pursuant to 2.80(o)(3), S. would have 18-24 months deducted for previous SPA.  At the instant hearing, the examiner recommended SPA of 6 months based on completion of GED in 10/03 and other programs.

5

directs the Commission to "add together the minimum of the total guideline range from the previous hearing, and the minimum of the guideline range for disciplinary infractions since the previous hearing". 28 C.F.R. § 2.80(m).  If at the previous hearing, the Commission had not applied the new rule (i.e., because it had not yet been promulgated), the Commission must first determine what the total guideline range from the previous hearing would have been, before it can add any necessary guidelines for disciplinary infractions, or grant any awards (in the form of subtractions from the guideline range) for program achievement.

The Commission found that Reynolds' current Total Guideline Range was service of 274-310 months before he would be eligible for parole.  As of January 7, 2004, Reynolds had been in custody for a total of 262 months.  Although the Commission recognized that Reynold's was eligible for consideration under the Commission's presumptive release date policy at 28 C.F.R. § 2.75, the Commission determined that a rehearing in thirty-six months, or after 298 months of service, a recommendation that was clearly within the guidelines, was warranted.  (Doc. 11, Ex. 5, Notice of Action).  Thus, by Notice of Action dated February 7, 2004, the Commission denied Reynolds parole and continued him to a three-year reconsideration hearing in January, 2007.[3]  Id.

---

[3]Pursuant to 28 C.F.R. § 2.75(a)(1), following an initial or subsequent hearing, the Commission may, inter alia, set a presumptive parole date up to three years from the date of the hearing, or schedule a reconsideration hearing three years from the month of the hearing.

On November 1, 2004, Reynolds filed the instant petition for writ of habeas corpus in which he alleges the following:

1.   The manner in which the parole rehearing was conducted was punitive in nature, depriving petitioner of his legal right.

2.   The Commission disregarded the DOC Parole Guideline Range, thereby engaging in improper "double counting."

3.   The Commission failed to comply with the DOC Parole Guideline to establish a presumptive parole date.

(Doc. 1, petition). Reynolds concludes that, as a result of the Commission's use of the conversion rules, he has been subjected to an increase in punishment, in violation of the ex post facto clause. Id.

**Discussion**

It is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission. United States v. Addonizio, 442 U.S. 178 (1979); Campbell v. United States Parole Commission, 704 F.2d 106 (3d Cir. 1983). The Commission shall also exercise authority over District of Columbia Code offenders pursuant to Section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, P.L. 105-33, and D.C. Code 24-209. See 28 C.F.R. §2.70. Therefore, the Commission has authority over Reynolds who is a D.C. offender. The guidelines for D.C. offenders are regulated by 28 C.F.R. §2.80.

Because the Constitution itself does not create any liberty interest in parole, such an interest to prove a due process violation must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979).[4] Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C. Cir. 1996) (D.C. parole statute and regulations do not create any liberty interest in parole.)

The function of judicial review of a Commission decision on a petition for writ of habeas corpus is to determine whether the Commission abused its discretion. The Court is not empowered to substitute its judgment for that of the Commission in evaluating a habeas petitioner's claims unless the Commission's

---

4. In addition to the general holding that the Constitution does not create any liberty interest in parole, the Supreme Court in cases following Greenholtz developed a methodology to determine when a liberty interest may be created by a state. see Board of Pardons v. Allen, 482 U.S. 369 (1987); Hewitt v. Helms, 459 U.S. 460 (1983). In Sandin v. Conner, 515 U.S. 472, (1995), the Sandin majority roundly criticized the methodology developed by the Greenholtz, Allen, and Hewitt Court. Ellis, 84 F.3d at 1417. Although it is unclear where the Supreme Court stands in regards to methodology, the general principle in Greenholtz was not overruled. Id.

exercise of discretion represents an egregious departure from rational decision-making.  See Butler v. United States Parole Commission, 570 F. Supp. 67-77 (M.D. Pa.1983).

To prevail on ex post facto challenge to a sentence, the petitioner has to show both that the law he challenges operated retroactively, that is, that it applied to conduct completed before its enactment, and that it raised the penalty from whatever the law provided when he acted.  Johnson v. United States, 529 U.S. 694 (2000); U.S.C.A. Const. Art. 1, §9, cl. 3.  The purpose for the clause, as articulated by the Supreme Court, is to prohibit "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."  California Dept. of Corrections v. Morales, 115 S. Ct. 1597, 1601 ( 1995).

The Supreme Court has stated that one function of the ex post facto clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission, and that retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept.  Garner v. Jones, 529 U.S. 244, 249 (2000).  The Court further stated that "whether the retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account."  Id.

In Garner, an inmate filed a §1983 civil rights action alleging that scheduling of his parole hearings by State Board of Pardons and Paroles violated

the ex post facto clause.  The amended rule changed the frequency of required parole reconsideration hearings for inmates serving life sentences from every three years to every eight years.  Id. at 246.  In its analysis, the Supreme Court stated that the case turned on the operation of the amendment to the rule within the whole context of Georgia's parole system.  Id. at 252.  The Court stated that Georgia law charges the Parole Board with determining which prisoners "may be released on pardon or parole and [with] fixing the time and conditions thereof."  Id. (citing Ga.Code Ann. §42-9-20 (1997)).  The Supreme Court found that the "essence of respondent's case, as we see it, is not that discretion has been changed in its exercise but that, in the period between parole reviews, it will not be exercised at all."  Id. at 254.  The Supreme Court held that the inmate must show that, as applied to his own sentence, the law created a significant risk of increasing his punishment.

In determining whether the inmate in Garner was at risk, the Supreme Court stated that "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion."  Id. at 256.  The Court stated "[t]hat absent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in fulfilling its obligation."  Id.  The Court found that "[r]ather than being required to review cases *pro forma*, the Board may set reconsideration dates according to the likelihood that a review will result in meaningful considerations as to whether an inmate is suitable for release."  Id. at 254.  The Board's stated policy was to provide for reconsideration at 8-year

10

intervals "when, in the Board's determination, it is not reasonable to expect that parole would be granted during the intervening years." Id. The Supreme Court found that the policy enabled the Board to put its resources to better use, to ensure that those prisoners who should receive parole come to its attention. Id.

In the instant petition, Reynolds has failed to demonstrate that the change in the guidelines created a significant risk of increasing his punishment. The Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done. See D.C. Code §24-1231(a). As the Supreme Court stated in Garner, "[t]he idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions." Id. at 253. Accordingly, the mere fact that the parole guidelines are amended and applied retroactively does not automatically implicate the ex post facto clause.

Furthermore, the Commission's guidelines do not constitute laws for ex post facto purposes. Parole guidelines provide guidance as to the exercise of agency discretion as opposed to prescriptive laws created by legislative branches of government that impose restrictions on agency authority. See, e.g., Sheary v. U.S.

11

Parole Commission, 822 F.2d 556, 558 (5th Cir. 1987) (rejecting ex post facto challenge to application of Commission's guidelines for federal prisoners, noting that it is "most dubious" that parole guidelines are to be viewed as laws); Prater v. U.S. Parole Commission, 802 F.2d 948, 954 (7th Cir. 1986) (en banc) (rejecting ex post facto challenge to Commission's guidelines, and stating that a change in the scope of the agency's discretion in enforcing the law does not activate the prohibition against ex post facto laws.); DiNapoli v. Northeast Regional Parole Commision, 764 F.2d 143, 147 (2d Cir.) ("federal parole guidelines ... are not 'laws' within the meaning of the ex post facto clause . . .."), cert. denied, 474 U.S. 1020 (1985).  Because the guidelines are not laws, a violation of the ex post facto clause can not exist since that is a basic requirement to prevail on an ex post facto challenge.  Johnson v. United States, 529 U.S. 694 (2000).

Reynolds also has failed to meet his burden of showing that the Commission's use of the guidelines at §2.80, which provide for the granting of "presumptive parole dates" up to three years in the future, resulted in increasing his punishment.  The D.C. guidelines contained a provision functionally identical to the Commission's guideline.  That regulation provided that: "Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate."  28 D.C.M.R. §104.11.  Thus, Reynolds' claim that the old guidelines utilized by the D.C. Board would have given him more lenient treatment than has been ordered by the Commission, is merely speculative.  The

12

Supreme Court has held that where the risk of increased punishment under an amended parole scheme is speculative and attenuated, a valid <u>ex</u> <u>post</u> <u>facto</u> claim does not exist.  <u>Morales</u>, 514 U.S. at 509.  Because the risk of increasing Reynolds' punishment under the Commission's guidelines is "speculative and attenuated," no valid <u>ex</u> <u>post</u> <u>facto</u> claim exists.  Accordingly, Reynolds' petition will be denied. An appropriate Order follows.


DATE: November 14, 2005                           s/ William J. Nealon
                                                  **United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH REYNOLDS,                    :        CIVIL ACTION NO. 3:CV-04-2396
                                   :
            Petitioner             :        (Judge Nealon)
                                   :
      v.                           :
                                   :
                                   :
TROY WILLIAMSON,                   :
                                   :
            Respondent             :

## ORDER

**NOW, THIS 14th DAY OF NOVEMBER, 2005,** for the reasons set

forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.      The petition for a writ of habeas corpus (Doc. 1), is

    **DENIED.**

2.      The Clerk of Court shall **CLOSE** this case.


                                   s/ William J. Nealon
                                   **United States District Judge**